IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RAMONA BUSTAMANTE (AVITIA),
Individually and As Personal Representative
of the Estate of LUIS ABITIA a/k/a LUIS AVITIA,

    Plaintiff,

vs.                                                  Civ. No. 08-315 JP/WPL

BOARD OF COUNTY COMMISSIONERS OF
SAN MIGUEL COUNTY, JOHN DOES
I through V, and JANE DOES I through V,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On October 29, 2009, Defendant Board of County Commissioners of San Miguel County ("Board") filed Motion for Award of Partial Attorney's Fees ("Board's Mot.")(Doc. No. 74). On November 13, 2009, Plaintiff Ramona Bustamante filed Plaintiff's Response to Defendant's Motion for an Award of Partial Attorney's Fees (Doc. No. 77). On November 27, 2009, the Board filed its Reply in Support of Motion for Award of Partial Attorney's Fees. Having reviewed the briefing and the applicable law, the Court finds that the Board's motion should be granted in part and denied in part.

### BACKGROUND

The full procedural background of this case is set forth extensively in the Court's Memorandum Opinion and Order (Doc. No. 71). Thus, the Court will set forth only those portions of the procedural history relevant to the resolution of the Board's motion.

1

On March 25, 2008, Plaintiff Ramona Bustamante filed her complaint in this case, bringing claims under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act ("NMTCA"), both individually and as personal representative of the Estate of Luis Avitia, alleging that the Board and unnamed defendants were liable for Avitia's death while he was incarcerated in the San Miguel County Detention Center ("SMCDC"). (Compl. at 1.) Bustamante named as defendants the Board, five John Does, and five Jane Does. (*Id.*) The John and Jane Does, identified as "agents and employees of the San Miguel County Detention Center," were sued in both their individual and official capacities. (*Id.* ¶ 3.) However, Bustamante never served the actual persons represented by the John and Jane Doe Defendants and never timely amended or timely moved to amend her complaint to reflect their real names. Instead, on June 25, 2009, more than three weeks after the deadline for filing pretrial motions, Bustamante moved to substitute four named officers or employees of the SMCDC for the John and Jane Doe defendants, claiming that the Board's Motion for Summary Judgment (Liability Issues) (Doc. No. 37) "recently ... identifie[d] the [] individual Defendants who were present and on duty" at the time of Avitia's death. (Doc. No. 44 at 1.)

Concurrent with the filing of her motion to substitute defendants, Bustamante filed individual responses to the Board's two summary judgment motions, in which she, *inter alia*, conceded her supervisory liability claim against the Board under 42 U.S.C. § 1983 and conceded that she was not validly the personal representative of Avitia's estate for purposes of asserting § 1983 claims on Avitia's behalf. The Court accepted those concessions, and dismissed with prejudice all of Bustamante's § 1983 claims against the Board. Furthermore, the Court denied Bustamante's motion to substitute defendants as untimely in accordance with Fed. R. Civ. P. 4(m).

**DISCUSSION**

**I.     Standard for Awarding Attorney's Fees**

Under 42 U.S.C. § 1988, the district courts have discretion to award reasonable attorney's fees to a prevailing party in a civil rights action. While a "prevailing *plaintiff* ordinarily is to be awarded attorney's fees in all but special circumstances," *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978)(emphasis in original), such is not the case for a prevailing defendant, *id.* at 420-21. Instead, a prevailing defendant is entitled to recover its reasonable attorney's fees only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* at 421; *see also Hughes v. Rowe,* 449 U.S. 5, 14 (1980)(holding that *Christiansburg* standard for awarding attorney's fees to a prevailing defendant applies to cases brought under 42 U.S.C. § 1983).

> The United States Supreme Court has cautioned that:
>
> In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. . . . [N]o matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Christiansburg*, 434 U.S. at 421-22.

It is thus clear that the district courts must be prudent in awarding attorney's fees to prevailing defendants only in those cases where the Court is firmly convinced that the plaintiff's claims were unreasonable and not merely legally inadequate. *See id.*

## II. Bustamante's Arguments Regarding the Board's Alleged Violation of D.N.M.LR-Civ. 7.1(a) and the Alleged Untimeliness of the Board's Board's Request for Attorney's Fees

Before turning to the substance of the Board's motion, the Court will briefly address two preliminary arguments Bustamante raises in her response.

### A. Violation of D.N.M.LR-Civ. 7.1(a)

First, Bustamante argues that the Board's motion should be denied because the Board's counsel did not seek Bustamante's counsel's concurrence before filing its motion for partial attorney's fees or any of its summary judgment motions. Specifically, Bustamante contends that "[c]ounsel for Defendant violated D.N.M.LR-Civ. 7.1(a) each and every time he filed a motion, and now does so again. Had he complied with the rule, he would have learned that Plaintiff did not oppose that portion of his proposed motion and would have saved his clients and the court a lot of time and money. This repeated disregard for the intent behind this mandatory requirements [sic], alone, is grounds for denial of the motion." (Resp. at 1-2.) The Board responds by acknowledging that it failed to seek the concurrence of opposing counsel before filing its motions for summary judgment, but simultaneously notes that Bustamante likewise failed to seek opposing counsel's concurrence before filing her motion to substitute defendants. Additionally, the Board contends that D.N.M.LR-Civ. 7.1(a) does not mandate denial of a motion for failure to comply, but instead leaves the determination of an appropriate sanction to the discretion of the Court.

D.N.M.LR-Civ. 7.1(a) provides in relevant part that a "[m]ovant must determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence *may* be summarily denied." (emphasis added). The express language

4

of the rule thus makes clear that while seeking the concurrence of opposing counsel before filing a motion is mandatory, the sanction for violation of the rule rests in the discretion of the Court, *i.e.,* the Court may impose a sanction up to and including summary denial of the motion.

Initially, the Court notes that while D.N.M.LR-Civ. 7.1(a) on its face requires no more than a good-faith attempt to seek opposing counsel's concurrence before filing a motion, the purpose and spirit behind the rule is more far reaching and deserves brief discussion here.  In short, D.N.M.LR-Civ. 7.1(a) seeks to facilitate communication between counsel.  While the only communication explicitly required by the rule is seeking the concurrence of opposing counsel, the Court would be remiss in not expressing its desire that counsel communicate with one another about other issues in the case that could be resolved by a simple conversation rather than by intervention of the Court. As is often the case, it appears that this dispute and the earlier confusion regarding the claims that Bustamante intended to maintain could have been resolved had the attorneys chosen to talk to one another.  The Court reminds counsel that engaging in motions practice that stems from a failure to communicate not only imposes an unnecessary burden on the Court's resources but also needlessly increases the cost of litigation for the parties involved.

While the Court certainly does not condone failure to comply with the local rules, the Court will not deny the Board's motion on that basis alone.  However, the Court admonishes counsel that adherence to the local rules is mandatory and should not be regarded as a mere formality.

### B. Timeliness of the Board's Request for Attorney's Fees

Second, Bustamante contends that the Board's request for attorney's fees is untimely because the Board did not specifically request attorney's fees in its previous filings or following the Court's award of partial summary judgment to the Board in a Memorandum Opinion and Order (Doc. No. 51) filed August 3, 2009. The Board responds by arguing that it has complied with D.N.M.LR-Civ. 54.5 by filing its motion within thirty days following the Court's entry of judgment and asserts that Bustamante's position is unsupported by law.

D.N.M.LR-Civ. 54.5 (a) provides in pertinent part that "[a] motion for attorney's fees . . . must be filed and served within thirty (30) days after entry of judgment." Nowhere does the rule require that a party request attorney's fees each time it files a motion with the Court, nor does the case law governing the award of attorney's fees require such requests. Indeed, the relevant case law unambiguously provides that such requests are disfavored as they would result in extraneous litigation that would burden the efficient administration of justice. *See White v. N.H. Dep't of Employment Sec.,* 455 U.S. 445, 452-53 (1982).

Remarkably, Bustamante cites no legal authority in support of her arguments, and those arguments do not find support in either the local rules or the applicable case law. Therefore, the Court finds Bustamante's arguments unpersuasive and will not deny the Board's motion as untimely.

### III. Board's Motion for Award of Partial Attorney's Fees (Doc. No. 74)

The Board moves for an award the attorney's fees stemming from the Board's counsel's preparation of Defendant's Motion for Summary Judgment (Liability Issues)

(Doc. No. 37), Defendant's Motion for Summary Judgment (Based on Plaintiff's Standing) (Doc. No. 38), and Defendant's Response in Opposition to Plaintiff's Motion to Substitute John and Jane Doe Defendants (Doc. No. 49), arguing generally that "Plaintiff's claim against the Board based on 42 U.S.C. § 1983 . . . and her 11th-hour attempt to substitute named persons for the John Does and Jane Does . . . were, under the circumstances, frivolous, unreasonable and/or without foundation." (Board's Mot. at 2.) The Court will address the request for attorney's fees related to each filing independently.

### A.     Defendant's Motion for Summary Judgment (Liability)

The Board asserts that it is entitled to an award of its attorney's fees related to the preparation of its motion for summary judgment regarding Bustamante's supervisory liability claim against the Board under 42 U.S.C. § 1983. In support of this assertion, the Board claims that "[i]n the face of the Board's mass of documentary evidence refuting [Bustamante]'s claim of constitutionally inadequate education, training and policies, [Bustamante] blithely 'concede[ed]' that her supervisory liability claims brought under 42 U.S.C. § 1983 against [the Board] should be dismissed for lack of evidence." (Board's Mot. at 7.) Thus, the Board argues, "clearly, without question, [Bustamante]'s § 1983 [supervisory liability] claim against the Board . . . was 'frivolous, unreasonable, or without foundation,' and it was so from the outset; the Board's disproof of the meritless claim, however, required a substantial expenditure of time, energy, and attorney's fees by the Board's counsel . . . ." (*Id.*)

In response, Bustamante contends that "at the outset of this case, [she] had ample grounds to believe, based upon the statements from the other inmates present at

the time, that the defendants had negligently failed to respond to repeated and pitiful calls for help as Mr. Avitia was slowly dying from internal injuries. This reported neglect and cold hearted refusal to come to this man's aid lead to a reasonable conclusion that those responsible were improperly trained and supervised. Simply put there was more than a good faith basis for Plaintiff to assert the claims made in this case." (Resp. at 3) (internal citations omitted.)  Bustamante then notes that she elected to drop her supervisory liability claim after the conclusion of discovery, and asserts that her choice to do so does not suggest that her supervisory liability claim was frivolous when she asserted it in her complaint.  Therefore, Bustamante argues that the Board has failed to demonstrate that it is entitled to its attorney's fees regarding Bustamante's supervisory liability claim.

The Board's request for attorney's fees related to its defense of Bustamante's supervisory liability claim presents a clear example of a situation in which lurks the temptation to apply hindsight logic.  Essentially, the Board has argued that Bustamante's supervisory liability claim was frivolous or unreasonable because Bustamante did not discover evidence to support such a claim during the course of the litigation.  However, this argument belies the Board's claimed entitlement to attorney's fees.  As *Christansburg* and its progeny dictate, a plaintiff need not be assured of success before asserting a particular cause of action.  Rather, *Christiansburg* fully supports a plaintiff asserting a claim for which she believes there is a reasonable basis, and upon conducting of a complete investigation of the facts surrounding that claim, dropping that claim where the investigation does not reveal any evidentiary support — in other words, doing exactly what Bustamante did with respect to her supervisory

liability claim. The Court has not found any evidence in the record to suggest that Bustamante's supervisory liability claim was unreasonable or frivolous when it was brought, and therefore the Court declines to award the Board its attorney's fees associated with defending this claim.

**B.     Defendant's Motion for Summary Judgment (Standing)**

The Board also moves for an award of attorney's fees associated with challenging Bustamante's standing to bring claims under 42 U.S.C. § 1983 on Avitia's behalf. Curiously, the Board offers no support for its motion in this regard beyond reciting the parties' previous arguments and the Court's holding on the issue, and instead describes the circumstances surrounding Bustamante's appointment as personal representative of Avitia's estate. Similarly, Bustamante offers little in response to the Board's request for its attorney's fees in this regard, except to argue that her "remaining claims were dismissed based on a combination of careful legal analysis of her remaining claims and this Court's interpretation of the New Mexico Tort Claims Act, along with a careful analysis of the standing issue as it relates to both § 1983 and the Tort Claims Act." (Resp. at 4.) Accordingly, Bustamante asserts that the Board's motion in this regard should be denied.

The Court initially notes that the question of standing to assert claims under 42 U.S.C. § 1983 on behalf of another is one involving complex issues of federal jurisdiction and statutory interpretation. Perhaps because of this complexity, this issue was never adequately addressed in the briefing. Instead, as discussed in the Court's Memorandum Opinion and Order (Doc. No. 71), the parties largely argued past each other — the Board focusing on Bustamante's standing to bring claims under 42 U.S.C. § 1983, and

9

Bustamante focusing on standing to bring claims under the New Mexico Tort Claims Act. In the end, the Court resolved the issue of standing by accepting Bustamante's concession that she is not validly the personal representative of Avitia's estate. (*See* Mem. Op. and Order at 14)(Doc. No. 71.) Importantly, the Court did not independently determine the validity of Bustamante's appointment as personal representative, which, as the Court noted, would have stretched the limits of the Court's jurisdiction. (*Id.*) However, by again raising the circumstances under which Bustamante was appointed personal representative of Avitia's estate in support of its argument that it is entitled to an award of attorney's fees related to the litigation of this issue, the Board is essentially inviting the Court anew to comment on the validity of Bustamante's appointment — as before, the Court declines this invitation.

Although the Court ultimately found that Bustamante lacked standing to assert claims under 42 U.S.C. § 1983, the Court does not find, nor has the Board presented, any evidence to suggest that the mere assertion of those claims was unreasonable or frivolous. Indeed, as the Court has previously noted, the Board itself argued the wrong legal standard for considering the issue of standing in this context, suggesting that the issue is not as clear-cut as the Board now suggests. (*See* Mem. Op. and Order at 12-13)(Doc. No. 71.) Thus, while Bustamante eventually recognized that her § 1983 claims lacked a legal foundation, her decision to bring those claims cannot be properly characterized as unreasonable or frivolous. Therefore, the Court finds that the Board's request for attorney's fees related to the litigation of this issue should be denied.

### C. Defendant's Response in Opposition to Plaintiff's Motion to Substitute John and Jane Doe Defendants

Finally, the Board moves for an award of the attorney's fees it incurred in responding to Bustamante's motion to substitute defendants. In support, the Board incorporates by reference the Court's reasoning for denying Bustamante's motion, and "emphasizes that [Bustamante]'s implied representation to the Court that she had only recently, and as a result of the Board's motion, learned the identities of the four persons whom she sought to substitute (the very basis of her 11th-hour attempt to sue them in place of the unnamed Does) was demonstrably false." (Board's Mot. at 8.) The Board adds that "[i]ndeed the evidence is clear that [Bustamante] knew their identities and their respective roles in the material events since at least August of 2007, and probably since October 2006, well before she filed the complaint at bar on March 25, 2008." (*Id.*) In a brief response, Bustamante acknowledges that the Court denied her motion to substitute defendants, but argues that "this does not mean that the claims originally brought against them were frivolous." (Resp. at 4.) Bustamante's argument misses the mark.

The Board's request for attorney's fees does not relate to Bustamante's assertion of claims against the Doe Defendants, but instead relates to the manner in which Bustamante attempted to substitute named defendants for those Doe Defendants. Whether the claims against the Doe Defendants were frivolous is inapposite. Rather, for purposes of assessing the Board's request for attorney's fees in this regard, the central question is whether the manner in which Bustamante sought to substitute defendants was frivolous or unreasonable. The Court answers this question in the affirmative.

11

> As the Court discussed in its Memorandum Opinion and Order (Doc. No. 71):
>
>> Bustamante missed several relevant deadlines leading up to her final, untimely attempt to substitute the four officers or employees of the SMCDC for the John and Jane Doe Defendants.  Bustamante was allowed until December 5, 2008 to amend her complaint and to join additional parties, which she did not do. (Doc. No. 6 at 2.) Discovery was to be complete by May 8, 2009 and pretrial motions were to be filed by June 1, 2009, meaning that Bustamante would have had more than three weeks after the completion of discovery to file her motion to substitute and serve the actual individual defendants. (Doc. No. 8 at 2.)  The Court also notes that the names of each of the individuals Bustamante sought to substitute appeared in the Joint Status Report and Provisional Discovery Plan filed on October 27, 2008 (Doc. No. 8 at 5-11).  It therefore strains credulity to believe Bustamante's implicit assertion in her motion that she could not have identified those individuals before the Board filed its motions for summary judgment.

(Mem. Op. and Order at 11-12.)  In short, the Court finds no conceivable way that Bustamante could have believed her untimely attempt to substitute defendants was reasonable.  The manner in which she attempted to do so demonstrated an egregious disregard for the Court's deadlines and the Federal Rules of Civil Procedure and is the kind of conduct that an award of attorney's fees is designed to discourage and prevent.  Accordingly, the Court finds that the Board is entitled to an award of the attorney's fees it incurred as a result of having to respond to Bustamante's motion to substitute defendants.  Based on the Court's review of the billing statements the Board attached to its motion, the Court determines that counsel for the Board reasonably expended 14.3 hours responding to Bustamante's motion, and finds that in accordance with counsel's hourly billing rate of $140.00, which is reasonable, an award of fees in the amount of $2,002.00 is appropriate.

## CONCLUSION

**IT IS THEREFORE ORDERED THAT** the Board's Motion for Award of Partial Attorney's Fees (Doc. No. 74) (1) is DENIED with respect to its request for fees related to the preparation of the Board's motions for summary judgment; and (2) is GRANTED to the extent that the Board will be awarded fees in the amount of $2,002.00 stemming from its defense of Bustamante's motion to substitute defendants.

_____
SENIOR UNITED STATES DISTRICT JUDGE